UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WESLEY GENE TATE, #1126120,
*also known as*
El-Shaheed Abdul-El Ali,

     Petitioner,

v.                                                  Civil No. 2:15cv286

HAROLD W. CLARKE,
Dir., Va. D.O.C.,

     Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Wesley Gene Tate ("Tate") is a Virginia inmate currently serving a 41-year active sentence following convictions in 2011 on charges of abduction with intent to defile, burglary, assault and battery of a family member, and two counts of forcible sodomy. His federal habeas petition alleges ten claims for relief.[1] Respondent moved to dismiss the petition, and the matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.

---

[1] As Respondent observes, Tate's petition alleges three grounds for relief with various subparts. The undersigned will organize this Report to consider all nine claims under each of these three grounds in order to thoroughly assess Tate's claims for relief. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed . . . .'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

1

Tate has procedurally defaulted most of his claims. As set forth in detail below, six of these claims assert ineffective assistance of counsel. Each of these claims was presented in a state habeas filing and resolved on the merits by the Norfolk Circuit Court. But Tate failed to present them to the Virginia Supreme Court for review, and they would now be procedurally barred if he tried to present them. With regard to all of the defaulted claims, Tate cannot show cause and prejudice to excuse the default, nor has he asserted a plausible claim of actual innocence. Tate's only exhausted claim, related to the sufficiency of the evidence, does not plausibly allege entitlement to federal relief under the deferential standard of 28 U.S.C. § 2254(d). Accordingly, the undersigned RECOMMENDS that the court deny all of Tate's claims, GRANT Respondent's motion (ECF No. 9), and DISMISS the petition.

## I. STATEMENT OF THE CASE

Following a bench trial, the Circuit Court of the City of Norfolk convicted Tate of breaking into the apartment of a former girlfriend and sexually assaulting her. Trial Tr., Commonwealth v. Ali (Tate), Nos. CR10001659-00 – CR10001659-05 (Va. Cir. Ct. May 2, 2011) [hereafter Trial Tr.]. Final judgment was entered May 2, 2011. The court sentenced him to a total of 115 years' imprisonment with 74 years suspended, for an active sentence of 41 years. Sentencing Order, Commonwealth v. Ali

2

(Tate), Nos. CR10001659-00, CR10001659-02 – CR10001659-05 (Va. Cir. Ct. Aug. 16, 2012).

Tate appealed his convictions to the Court of Appeals of Virginia. Ali (Tate) v. Commonwealth, No. 1418-12-1 (Va. Ct. App. Feb. 28, 2013) (per curiam). He argued that the evidence was insufficient to support his convictions. In denying his appeal, the Court of Appeals summarized the facts relevant to his arguments as follows:

> [T]he evidence proved that on the evening of January 9, 2010, at approximately 11:40 p.m., appellant broke into the home of the victim, his ex-girlfriend. She heard the glass pane of the door breaking, and then the door was kicked in. She attempted "to run upstairs and dial 9-1-1," but appellant "pulled [her] by the back of [her] clothing and pulled [her] back down the stairs." He then took her to the living room sofa and "started punching [her] in the back of [her] head and neck five times." Appellant "punched [her] so hard that [her] sofa where you sit in it went to the floor." At one point, appellant "slung" the victim, causing her right forearm and hand to hit a table. As a result, the victim suffered torn ligaments in her wrist, a broken finger, out-of-place discs in her back and neck, and extensive bruising on the back of her head and neck.
>
> After beating the victim, appellant "took his penis out" and "started making [the victim] give him oral sex." He held the back of her head and "forced [her]" to "give him oral sex," "insert[ing] his penis into [her] mouth ... to the point where it was choking [her]." Appellant then "pulled [the victim's] pants off of [her]" and put his tongue "in [her] vagina." She was "screaming, telling him to stop." Appellant forced the victim to perform oral sex on him "[a]bout four times throughout the night" and performed oral sex on her against her will. The victim testified that, "each time he did it, after he would stop or whatever, he would just laugh, you

3

know, as if though ... he had a thrill over what he was doing and the things that he was saying to me."

These events occurred over a period of "about eight and a half hours" - from approximately 11:40 p.m. on January 9 to 8:00 a.m. on January 10. When asked why she did not just run out, the victim testified, "Because he had beat me severely, and he was threatening to kill me." She further stated, "[H]e had put so much fear in me to the point that I really-I was afraid of my life there because I had seen what he had already did." "I was just so afraid," the victim continued, "trying to comply to what he was telling me to do, hoping that he wouldn't kill me throughout that night." The victim eventually convinced appellant to take her to the hospital emergency room. He instructed her to tell the hospital staff that they were "moving an entertainment center and a DVD player fell on [the victim] and that's why [her] head is hurting" and told her he would "snap [her] neck" if she told them otherwise. "They may get me," appellant told the victim, "but I'm going to snap your neck and you will be dead." Appellant then cleaned up the glass he had broken in the door, ate some food from the victim's refrigerator, forced the victim to clean herself with a douche, and took her to the hospital at approximately 9:00 a.m.

At the hospital, appellant did not leave the victim's side until an x-ray technician would not allow him to enter the room. Once separated from appellant, the victim "felt that was the only time that [she] would be safe," so she told the x-ray technician what had occurred. The x-ray technician testified that the victim "was upset," "looked scared," and was in "a childlike state." He described appellant as "the authoritative figure in there" and said appellant "would not let [the victim] speak."

After the victim confided to the x-ray technician what had happened, the technician notified hospital security and hospital staff alerted the police. The arresting officer testified that appellant "took off running, as soon as [the officer] spoke with the victim." The officer, with the assistance of

4

hospital security, caught appellant and placed him in custody.

Appellant, a convicted felon, testified in his own defense.   He admitted he did not have a key to the victim's house when he entered it on January 9, 2010, and testified he "broke the little pane" on the balcony door to enter the house.   Appellant asserted that the victim was not home when he broke in, but arrived later. He testified that he had consensual sex with the victim and that the fight started when the victim learned appellant had used a condom. Appellant "concedes that there was a physical altercation;   of   which   [appellant]   accepts responsibility for igniting."   He denies, however, "any and all unlawful conduct" and claims the victim's wrist, hand, and forearm injuries were "normal" results of "punch[ing] somebody in the wrong fashion in the wrong way."   Appellant also testified that the victim's head and neck injuries resulted from a box falling on top of her.   Appellant did not address the forcible sodomy charges.

Id.

The Court of Appeals found the evidence sufficient to sustain the convictions on all counts and denied his petition for appeal on the merits by a per curiam opinion dated February 28, 2013. Id.   Thereafter, Tate's trial counsel filed a petition for appeal in the Supreme Court of Virginia, which was refused on June 28, 2013.   Ali (Tate) v. Commonwealth, No. 130432 (Va. June 28, 2013).

On December 3, 2013, Tate, with the assistance of counsel, filed a petition for a writ of habeas corpus in the Circuit Court of the City of Norfolk. State Habeas Pet., Ali (Tate) v. Clarke. His state habeas petition asserted 11 different claims

all related to the alleged ineffectiveness of his trial counsel. Applying Strickland in a written opinion the state habeas court rejected each one. Tate (Ali) v. Clarke, No. CL13-8946 (Va. Cir. Ct., Apr. 2, 2014).

Tate then filed a petition for appeal to the Supreme Court of Virginia. The petition, however, raised only one error – challenging the Circuit Court's decision not to hold an evidentiary hearing on his claims of ineffectiveness. The petition was refused on November 4, 2014. Tate (Ali) v. Clarke, No. 141026 (Va. Nov. 4, 2014). Tate then filed his federal habeas petition, pro sé on June 22, 2015. (ECF No. 1).

In his federal petition, Tate's allegations and argument comprise ten claims for habeas relief, but for clarity in this Report they are divided according to substance alleging three separate grounds and their various subparts.

Tate's first ground challenges the sufficiency of the evidence used to convict him and a related evidentiary error which was not preserved. The second ground alleges that Tate's trial counsel provided ineffective assistance such that Tate was deprived of his Sixth Amendment right to counsel. In total, Tate asserts seven overlapping sub-claims related to his attorney's investigation preparation and cross-examination at trial and

sentencing.[2] The third ground asserts due process claims related to the prosecutor's alleged use of false testimony.

The respondent filed a motion to dismiss the petition and argued that most of Tate's claims had been procedurally defaulted, and the remaining claims were without merit. See Resp't's Br. (ECF No. 11, at 6-8). Tate received notice of the motion and his opportunity to respond as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Tate filed a timely opposition brief totaling 52 pages (ECF No. 18), and the matter is ripe for review.

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Tate's exhausted claim, which is related to the sufficiency of the evidence, cannot satisfy the deferential standard of review under § 2254(d). His remaining claims are either procedurally defaulted or simultaneously exhausted and defaulted, and Tate has not made the necessary showing to obtain review of those claims in federal court. To the extent any other claims may be considered exhausted, they lack merit.

---

[2] One of Tate's ineffectiveness claims was asserted in an amended pleading lodged after the Respondent was served but before any responsive pleading was due. (ECF No. 8). Because the Respondent fully addressed the new claim in his Motion to Dismiss, the undersigned recommends that the Court grant Tate's Motion to Amend and consider the additional claim. This Report addresses the new claim along with Tate's other claims of ineffectiveness in Parts B(1) and (2).

**A. Tate's Claim of Insufficient Evidence Does Not Show That Tate Is Entitled to Relief Under § 2254(d).**

Tate's only claim that was clearly exhausted in the state court was his challenge to the sufficiency of the evidence used to convict him. See Pet. (ECF No. 1, at 15-16). Tate exhausted this claim by presenting it to the Supreme Court of Virginia on direct appeal. See Pet. for Appeal, at 4, Ali (Tate) v. Commonwealth, No. 130432. Once a petitioner's state remedies have been exhausted, a federal court still may not grant relief on any claim adjudicated on the merits by the state court, unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2).[3] Therefore, the court is obliged to analyze this claim under 28 U.S.C. § 2254(d) by assessing the reasonableness of the Court of Appeals of Virginia's decision. Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (holding that the

---

[3] A state court's decision is contrary to clearly established federal law if the court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. A state court makes an unreasonable determination of fact when its application of the law depends, in whole or in part, on a factual finding that is not supported by evidence in the record. See Wiggins v. Smith, 539 U.S. 510, 528 (2003).

federal habeas court looks to the last explained state court judgment).

### 1. The Court of Appeals of Virginia's Conclusion That the Evidence Was Sufficient to Convict Tate Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law.

An essential element of the right to due process secured by the Fourteenth Amendment to the Federal Constitution is that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof - defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979) (citing In re Winship, 397 U.S. 358 (1970)). Therefore, a petitioner who alleges that the evidence was insufficient to sustain a conviction has stated a constitutional claim cognizable in a federal habeas corpus proceeding. Id. at 321.

In reviewing a sufficiency of the evidence claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). The reviewing court must consider circumstantial as well as direct evidence, and allow the prosecution the benefit of all reasonable inferences from the facts proven to those sought to

be established.   United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

As the Supreme Court has expressly recognized, it is wholly the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences.   Jackson, 443 U.S. at 319.   In Wright v. West, the Supreme Court expounded upon Jackson, stating:

> In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.   We said that "all of the evidence is to be considered in the light most favorable to the prosecution"; that the prosecution need not affirmatively "rule out every hypothesis except that of guilt"; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

505 U.S. 277, 296-97 (1992) (emphasis in original) (internal citations omitted).

Under federal habeas review, the court looks to the state court's decision and assesses only whether it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d). Here, the Court of Appeals of Virginia conducted a full review

of Tate's claim, and concluded that there was sufficient evidence to convict him on all counts. Thus, Tate is only entitled to relief if that determination was an unreasonable application of the above-cited Supreme Court precedent. The undersigned finds that it was not.

Based on the evidence presented at trial, and as discussed by the Court of Appeals, there was adequate evidence for a reasonable trier of fact to find all the elements of the counts Tate challenged. As even Tate acknowledges, the case involved a credibility contest between him and his victim. The lengthy excerpt quoted above demonstrates that the victim's testimony, as partially corroborated by hospital staff, and even Tate himself, established that Tate had no permission to enter the victim's residence, gained access by breaking a window, physically brutalized his victim, and forced her repeatedly to engage in sexual acts against her will. Tate does not even attempt to argue that this evidence would be insufficient to establish any individual count. Instead, he merely reiterates the credibility challenges that were thoroughly addressed by the Court of Appeals. As the Court of Appeals held, "[t]he trial court's acceptance of most of the victim's testimony and rejection of appellant's explanation of innocence was not plainly wrong." Ali (Tate) v. Commonwealth, No. 1418-2-1, at 6 (Va. Ct. App. Feb. 28, 2013).

Based on the evidence presented at trial, including the testimony of the victim and Tate's prior history of violence, there was sufficient evidence for a reasonable trier of fact to find Tate guilty. As a result, Tate cannot establish that the state court decision was unreasonable and the undersigned recommends that Tate's sufficiency claim be dismissed.

### 2. Tate's Alternative Evidentiary Claim Fails to Allege a Cognizable Claim for Federal Habeas Relief.

Tate's other evidentiary claim argues that the trial court erred in excluding evidence of the victim having previously made and then withdrawn allegations against him. This claim was not presented on appeal or in Tate's state habeas petition. Moreover, the charge fails to state a claim for federal habeas relief because Tate merely alleges a violation of Virginia law.

A federal habeas court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody <u>in violation of the Constitution or laws or treaties of the United States</u>."   28 U.S.C. § 2254(a) (emphasis added).

Tate's second evidentiary challenge, even if exhausted, would present only a state law question concerning the admissibility of evidence. Such rulings are not ordinarily subject to federal habeas review unless they were "so extreme as

to result in a denial of a constitutionally fair proceeding." Burkett v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). Here, Tate's counsel had ample opportunity to cross-examine the victim and challenge her credibility in light of their prior consensual relationship. He also examined her on prior instances of alleged false reporting, but the trial judge in a bench trial ruled that evidence of alleged prior false reporting unrelated to sexual assault would not be admitted. Trial Tr., at 68-74. Ultimately, the factfinder accepted the victim's testimony, and any error in declining to admit the evidence of alleged prior reports would not affect the constitutional fairness of Tate's trial or undermine confidence in its outcome. See Estelle v. McGuire, 502 U.S. 62, 67 (1991); Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) ("Matters of state law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief."). Therefore, Tate is not entitled to federal habeas relief on his evidentiary challenges, and the undersigned recommends that both of his evidentiary claims be dismissed.

### B. Tate Failed to Exhaust His State Court Remedies and Has Procedurally Defaulted His Remaining Claims.

Habeas petitions that challenge a state's custody over a petitioner must show that such custody violates the "Constitution or laws or treaties of the United States." 28

13

U.S.C. § 2254(a).  Before seeking a writ of habeas corpus from a federal court, petitioners must exhaust the remedies available to them in state court or demonstrate the absence or ineffectiveness of such remedies.  28 U.S.C. § 2254(b)(1).  The state prisoner must give the state court an initial opportunity to consider the alleged constitutional errors that occurred in his state trial and sentencing.  Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).  In order "[t]o satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court."  Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997); Picard v. Connor, 404 U.S. 270, 275-76 (1971).  This "generally requires that the essential legal theories and factual allegations advanced in federal court be the same as those advanced at least once to the highest state court."  Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993).  In other words, Tate must have "present[ed] the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition."  Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 587 (E.D. Va. 2006).

If a petitioner presents unexhausted claims, the court may dismiss the federal petition without prejudice to permit

exhaustion. See, e.g., George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996). However, "when it is clear that the state law would bar state review, exhaustion is not required, and federal review is precluded." Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990); see also Gray v. Netherland, 518 U.S. 152, 161 (1996). This is so because federal habeas review under § 2254 is limited to review of the state court's decision on a merits issue cognizable under federal law.[4] That is, the existence of a procedural bar in state court will render a petitioner's claims both exhausted and defaulted at once when presented in federal court, so long as the state procedural bar rests on independent and adequate state law grounds. See Bassette, 915 F.2d at 937. That is the case here.

> 1. **Tate's Ineffectiveness Claims Were Never Presented to the Supreme Court of Virginia and They are Simultaneously Exhausted and Defaulted.**

Tate did present his ineffectiveness claims in a state habeas petition. See State Habeas Pet., Ali (Tate) v. Clark. The petition was considered and denied on the merits in a written opinion by the Circuit Court for the City of Norfolk. Tate (Ali) v. Clarke, No. CL13-8946 (Va. Cir. Ct. Apr. 2, 2014).

---

[4] In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," because "Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

But his appeal to the Supreme Court of Virginia from the circuit court's state habeas decision failed to allege any specific error in the claims already decided. Instead, Tate challenged only the Circuit Court's decision to deny an evidentiary hearing. Pet. for Appeal, <u>Tate (Ali) v. Clarke</u>, No. 141026. That procedural default in the state court prevented Tate from presenting the claims raised in his circuit court habeas petition to the Supreme Court of Virginia because he failed to raise them in an assignment of error. <u>Yeatts v. Murray</u>, 455 S.E.2d 18, 21-22 (Va. 1995). His original circuit court filing also barred a new petition in the Supreme Court of Virginia alleging the same grounds. <u>See</u> Va. Code Ann. § 8.01-654(B)(2). These rules are independent and adequate state law grounds which prevent Tate from now exhausting his ineffectiveness claims presented here. Because Tate cannot now present these claims to the Supreme Court of Virginia, they are exhausted, defaulted, and precluded from federal habeas review by this court. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996) (discussing § 2254(b) and Virginia Code § 8.01-654(B)(2)).

A petitioner may overcome a procedural default by showing "cause and prejudice" or by establishing that his confinement constitutes "a miscarriage of justice." <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90-91 (1977). The court may excuse a default under the cause and prejudice standard when the petitioner

demonstrates (1) "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" and (2) that "errors at his trial . . . worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." Wolfe v. Johnson, 565 F.3d 140, 158 n.27 (4th Cir. 2009) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986); United States v. Frady, 456 U.S. 152, 170 (1982)). Tate has not attempted to meet the cause and prejudice standard, and the court's own review of the record discloses no evidence suggesting that he could.[5] He has, however, broadly asserted the second exception permitting review of procedurally defaulted claims, asserting a miscarriage of justice based on his actual innocence.

In his reply brief, Tate correctly identified the standard for obtaining relief under a suggestion of actual innocence. (ECF No. 18, at 2). The exception excuses procedural default when "a constitutional error has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier,

---

[5] Notably, inadequate assistance of counsel for initial habeas proceedings may establish cause, in the cause and prejudice analysis, to excuse a petitioner's procedural default of a claim of ineffective assistance at trial. Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). However, in this case, Tate's habeas petition was filed with the assistance of counsel, and he has not asserted any claim that his habeas counsel's ineffectiveness prevented him from properly exhausting the claims. Moreover, the rule from Martinez regarding cause and prejudice based on lack of counsel is limited to initial collateral proceedings. See Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731, at *1 (4th Cir. Mar. 8, 2013) (unpublished per curiam)

477 U.S. 478, 496 (1986). To obtain federal review of a defaulted claim, the petitioner must identify "new reliable evidence," not available to him at trial, and the court must find, "in light of the new evidence it is more likely than not no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327-28 (1995); Sharpe v. Bell, 592 F.3d 372, 377 (4th Cir. 2010). Tate's argument meets neither of these elements.

First, he has not identified any new evidence. Instead, he has cited to the victim's medical records, which were available to him at trial and offered by his attorney. These records were also the subject of a post-trial motion, and considered carefully by the trial judge who also heard the evidence as factfinder at Tate's trial. Post-Trial Mot. Hr'g Tr., Commonwealth v. Ali (Tate), (Va. Cir. Ct. Aug. 10, 2012). Diagrams and affidavits created by Tate himself are the only other "new evidence" described in Tate's brief. (ECF No. 18, at 101-13). These documents, though created after Tate's trial, are not new evidence. They are merely a re-write of arguments previously available to Tate, and largely already employed in his defense. In addition, even if the proffered exhibits were considered as new evidence, they do not establish that it was more likely than not that no reasonable juror would have found him guilty. Accordingly, they do not place his case in the

18

narrow category of "extraordinary" cases warranting federal review of a defaulted claim. Schlup, 513 U.S. at 327 (quoting McClesky v. Zant, 499 U.S. 467, 494 (1991)).

> **2.   Even if Tate's Appeal Exhausted his Ineffective Assistance of Counsel Claims, He has Failed to Meet the Deferential Standard of Review Under § 2254(d).**

Because Tate failed to establish a basis for federal review, no further analysis of his ineffectiveness claims is required. Nevertheless, the circuit court denied Tate's petition on the merits, and his state petition addressed all of the ineffectiveness claims asserted here. Thus, assuming without deciding that Tate's rejected appeal had exhausted those claims, review in this court would be limited to the doubly deferential standard of review for ineffectiveness claims under § 2254(d). See, Harrington v. Richter, 562 U.S. 86, 102 (2011). None of his federal claims meet this high bar.

Under Strickland v. Washington, 466 U.S. 668 (1984), the relevant inquiry is whether "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). This presumption is not easily overcome because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." <u>Strickland</u>, 466 U.S. at 687.  In order to succeed, a petitioner must satisfy both the "performance" and the "prejudice" prongs of <u>Strickland</u>'s two-part test.  <u>Id.</u>[6]  To satisfy the "performance" prong of the test, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" such that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u>  To satisfy the "prejudice" prong of the test, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.[7]

### i. Claim One

Tate first argues that his trial counsel was constitutionally ineffective because he failed to impeach the victim using her medical records. (ECF No. 1, at 17-18).  In fact, much of Tate's briefing is directed to what he perceives

---

[6] Because both prongs of the test are "separate and distinct elements" of an ineffective assistance claim, Tate must satisfy both requirements of the test to prevail on the merits.  <u>Spencer v. Murray</u>, 18 F.3d 229, 232-33 (4th Cir. 1994); <u>see</u> <u>Strickland</u>, 466 U.S. at 697. Likewise, the court can address the elements in any order. Additionally, the court reviews alleged errors of counsel individually, not cumulatively.  <u>Fisher v. Angelone</u>, 163 F.3d 835, 852 (4th Cir. 1998).

[7] The Supreme Court has defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694; <u>Lovitt v. True</u>, 403 F.3d 171, 181 (4th Cir. 2005).

as significant differences between the medical records and the victim's description of her injuries.

From the record it does appear that Tate's counsel had the medical records and attempted to offer them at trial but was precluded from doing so because he had not obtained an authenticity affidavit or witness.  Trial Tr., at 153-56.

In rejecting this ineffectiveness claim, however, the state habeas court noted that Tate had not identified the supposed inconsistencies nor made any proffer concerning what the medical records would have revealed.  Tate (Ali) v. Clarke, No. CL13-8946, at 1 (Va. Cir. Ct. Apr. 2, 2014).  Although Tate has submitted the records here, this court must evaluate his claim in light of the evidence presented to the state court.  Cullen, 563 U.S. at 181-82.  In light of that record, there is nothing unreasonable about the state court's rejection of Tate's claim.  Moreover, even after reviewing the medical records, they do not explicitly refute the victim's descriptions of her injuries.  In fact, during a hearing on Tate's post-trial motion seeking a new trial on the basis that the records were excluded, the trial judge (and factfinder) observed that the records reflected "significant trauma."  Post-Trial Mot. Hr'g Tr., at 9, Commonwealth v. Ali (Tate), (Va. Cir. Ct. Aug 10, 2012).  Thus, by using the records, Tate's counsel could have tried to establish that his victim exaggerated her condition.  But given

all of the other evidence, including Tate's own explanation of the victim's injuries, even if his counsel's performance fell below Strickland's performance standard, it would not give rise to a reasonable probability of a different outcome at trial. Therefore, the undersigned recommends that Tate's first ineffectiveness claim be dismissed for failure to state a claim under § 2254(d).

### ii. Claim Two

Tate next argues that his trial counsel was constitutionally ineffective because he failed to investigate the victim's alleged prior history of false reports. (ECF No. 1, at 19). As the state habeas court observed, this claim is simply contrary to the evidence presented at trial, which showed that counsel did cross-examine the victim regarding her previous accusations until the trial court sustained an objection to any further evidence of them. Trial Tr., at 68-74. He also examined other witnesses concerning the victim's prior altercations with Tate. Id. at 102-21. Finally, he cross-examined the victim, establishing that she had continued to reside with Tate even after two prior domestic violence convictions against him in which she was the victim. Id. at 65-67.

Considering all of this testimony, the state habeas court's decision to dismiss this claim of ineffectiveness was not based on any unreasonable determination of fact, nor was it contrary to or based on an unreasonable application of the <u>Strickland</u> standard.

### iii. Claim Three

Tate next argues that his trial counsel was constitutionally ineffective because he did not subpoena a detective with information concerning one of the victim's previous false reports of criminal charges against him. (ECF No., 1 at 19). Tate's trial attorney did attempt to explore with the victim prior instances where she had accused Tate and failed to follow through with criminal charges. He also inquired of a detective summonsed to testify concerning a prior allegations of burglary, but the detective had no information regarding the investigation. Trial Tr., at 100-02.

Respondent's brief contends that this evidence would not have been admissible in any event under the trial court's prior rulings limiting counsel's inquiry. (ECF No. 11). However, the transcript indicates that the court may have considered the matter somewhat differently, as it involved a prior instance of the same charged conduct – burglary. Trial Tr., at 98-99. Eventually, the trial court permitted the witness to testify but he was only involved in the Defendant's arrest, stating he had

23

no investigative responsibilities regarding the alleged burglary. Id.

In rejecting this ineffectiveness claim, the state habeas court wrote that the anticipated evidence, which the witness ultimately could not supply, likely would have been inadmissible as it did not relate to a prior false claim of sexual assault. Final Order, Tate (Ali) v. Clarke, No. CL13-8946, at 4 (Va. Cir. Ct. Apr. 2, 2014) (citing Clinebell v. Commonwealth, 368 S.E.2d 263 (1988)). Alternatively, the court held that Tate had not met the second prong of Strickland, in that the evidence would not establish any reasonable likelihood of a change in the outcome of trial. In this court, Tate fails to describe how the results of his trial would have been different even if a different detective had been summoned. There was extensive discussion of the victim's tumultuous relationship with the Defendant, and his attorney was permitted to proffer to the finder of fact - the trial judge - all of the circumstances of the alleged prior burglary. As a result, there is no evidence of Strickland prejudice resulting from trial counsel's alleged error in summoning the wrong detective. Therefore, Tate fails to state a claim under § 2254(d), and the undersigned recommends that Tate's third claim of ineffectiveness be dismissed.

### iv. Claims Four and Five

Tate next argues that his trial counsel was constitutionally ineffective because he did not subpoena two witnesses he claims would have established that he (Tate) had personal property, including work clothes, in the victim's residence. (ECF No. 1, at 19-20).

The state habeas court rejected both of these claims, concluding that the evidence proffered by Tate, which would be derived from the witnesses, was likely inadmissible, and largely irrelevant to the defenses he raised. Final Order, _Tate v. Clarke_, No. CL13-8946, at 5 (Va. Cir. Ct. Apr. 2, 2014). In this court, Tate claims that the witness' testimony would have undermined the victim's statement that she had locked Tate out of the condominium and that he was no longer residing there.

Trial counsel for the accused "ha[s] an obligation to investigate possible methods for impeaching a prosecution witness, and failure to do so may constitute ineffective assistance of counsel." _Tucker_, 350 F.3d at 444 (citing _Huffington v. Nuth_, 140 F.3d 572, 580 (4th Cir. 1998)). But, "the reasonableness of the investigation depends, in part, upon the importance of the witness to the prosecution's case." _Id._ If counsel fails to investigate "a witness who has been identified as crucial," then that "may indicate an inadequate investigation." _Huffington_, 140 F.3d at 580 (quoting _Gray v._

25

Lucas, 677 F.2d 1086, 1093 n.6 (5th Cir. 1982)). However, "[p]ost-conviction counsel's backward-looking characterization of the role of any particular witness should have no bearing on this question." Tucker, 350 F.3d at 444 n.7 (citations omitted).

In this case, the victim acknowledged that Tate formerly resided with her and had only been removed a short time before the assault. And Tate acknowledged that he no longer had a key to the residence and had to break a window to gain access. Accordingly, any testimony from these two witnesses suggesting that Tate had lived at the residence or may have had clothes or belongings in the premises would have had no effect on the outcome of the case. The state habeas court's similar conclusion was not contrary to, or an unreasonable application of federal law.

### v. Claim Six

Next, Tate argues that his sentencing counsel was ineffective because he failed to request a continuance to permit his participation in a psychosexual evaluation. The state habeas court denied this claim, noting that Tate had refused to cooperate with the evaluation after it was ordered. Final Order Tate v. Clarke, No. CL13-8946, at 6 (Va. Cir. Ct. Apr. 2, 2014). As a result of his client's refusal to cooperate, the state

court held that his attorney's failure to request a continuance did not meet either prong of Strickland.

In this court, Tate argues that he declined to participate because he was not aware of the procedure. But he has still articulated no basis to conclude that a continuance would have had any material impact on his conviction or sentence. See Nickerson v. Lee, 971 F.2d 1125, 1135-36 (4th Cir. 1992) ("[A] habeas petitioner must come forward with some evidence that the claim might have merit.") (abrogated on other grounds by Trest v. Cain, 522 U.S. 87, 89 (1997)). In short, the state habeas court made at least "a reasonable" argument that counsel satisfied Strickland's deferential standard, which is all that is required to bar federal relief under § 2254(d). Richter, 562 U.S. at 105.

### vi. Claim Seven

Tate's final ineffectiveness claim argues that his counsel was constitutionally ineffective because he failed to adequately confer with him prior to trial. Again, Tate has not proffered what issues counsel should have discussed with him, what information likely could have been discovered, or how the inadequate conference with his attorney led to a deficient defense. He somewhat mysteriously suggests that he had knowledge of the "abduction narrative" and events that took place at the condominium where his victim lived and at the

hospital where she was treated.   (ECF No. 8, at 1-2).   But his
pleadings shed no light on what this superior knowledge would
have revealed which had not already been employed in his
defense. For these reasons, the state habeas court rejected the
claim, noting that the Sixth Amendment does not guarantee a
"meaningful relationship" between counsel and the accused.
Final Order, Tate v. Clarke, No. CL13-8946, at 3 (Va. Cir. Ct.
Apr. 2, 2014) (quoting Morris v. Slappy, 461 U.S. 1, 14 (1983)).
In his federal claim, Tate articulates no unreasonable
application of Strickland in the state court's analysis.
Accordingly, the undersigned recommends that Tate's seventh and
final ineffective assistance of counsel claim be dismissed.

> **3. Tate's Due Process Claims Were Procedurally
> Defaulted and He Cannot Show Cause or Prejudice
> to Excuse the Default.**

Tate's third ground for habeas relief argues that the
prosecutor violated his right to due process by knowingly
offering false testimony.   (ECF No. 1, at 21).   The claims of
false testimony relate to the same alleged inconsistencies
between the victim's testimony, the descriptions of her injuries
and the medical records of her treatment following the incident.
As set forth previously, the medical records do not flatly
contradict the victim's testimony. As a result, they do not –
as argued by Tate – prove that the victim testified falsely.
And there is nothing improper in the prosecutor offering the

victim's testimony even knowing it was subject to impeachment. Moreover, Tate has attempted to present these claims for the first time in this federal petition. Because his state court proceedings are concluded, this claim is procedurally defaulted. Bassette, 915 F.2d at 937.

Tate has also failed to argue or otherwise show any cause or prejudice to excuse his default of these claims. He was represented by counsel throughout his trial, post-trial motions, direct appeal, and his first habeas petition, and none of his attorneys raised this argument on his behalf. Moreover, inadequate assistance of counsel at initial collateral review proceedings only serves to potentially show cause for defaulted ineffective assistance of trial counsel claims. See Martinez, 132 S. Ct at 1319 ("Coleman held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial."). Tate's claims of prosecutorial misconduct, therefore, are exhausted, defaulted, and precluded from federal review. See, e.g., Bassette, 915 F.2d at 937. The undersigned recommends they be dismissed.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Tate's Motion to Amend the Petition (ECF No. 8) be GRANTED;

Respondent's Motion to Dismiss (ECF No. 9) be GRANTED, that Tate's Motion for Appointment of Counsel (ECF No. 16) and Motion to Hire an Investigator (ECF No. 17) be DENIED, and that Tate's Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and the claims DISMISSED with prejudice.

## IV.  <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. §636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v.</u>

Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce,

727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to the petitioner

and to counsel of record for the respondent.

                                          _____/s/_____
                                          Douglas E. Miller
                                          United States Magistrate Judge
                                          _____
                                          DOUGLAS E. MILLER
                                          UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

January 12, 2016

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to:

**Wesley Gene Tate**
#1126120
Wallens Ridge State Prison
272 Dogwood Ln
P.O. Box 159
Big Stone Gap, VA 24219

and an electronic copy was provided to:

**Steven Andrew Witmer**
Office of the Attorney General
900 E Main St
Richmond, VA 23219

Fernando Galindo, Clerk

By_____
    Deputy Clerk

January 12 , 2016